23-958 Travelers Property Casualty v. Furnishare Thank you very much. Good morning. I'm Amy Gross for Ussery & Associates and I'm here for Appellants Travelers. Travelers is here today appealing the District Court's decision in order to correct two central errors in how that court interpreted the auto exclusion in Travelers General Liability Policies. Now the auto exclusion precludes coverage under the Travelers Policies for property damage arising out of the use of the insured, that's Furnishare's vehicle. Now use in the Travelers Policy includes loading and unloading. Loading and unloading specifically defined in the Travelers Policy and as also treated under the New York Complete Operations Doctrine means the handling of property after it is moved from the place where it's accepted for movement into or onto the vehicle, while it's on the vehicle, and then while it's being moved from the vehicle to the place where it's finally delivered. Now there are two fundamental errors that the District Court made in finding that the auto exclusion did not apply and that therefore the Travelers Policy covered the underlying accident. And the first error is that the District Court wrongly found ambiguous the term the place where the property is accepted for loading onto the vehicle. Why is that? I mean, why is that incorrect on the District Court's part? I mean, place here is, it seems very ambiguous. It's not defined. I mean, is the place outside? The basic question when I first looked at this case was, is the place right, the one right outside the unit in the building, which is where the accident occurred, or is it down on the street? And so it seems to me that, you know, it's ambiguous. Well, I respectfully disagree, and one of the things you have to do in looking at what that provision means is ask yourself, what does acceptance mean? Where did Furnisher accept the couch and take it away from movement onto the vehicle? Furnisher came to the customer's apartment, took the couch, took custody of the couch, and as any reasonable person would expect when they're selling a piece of furniture, they then took it away from the customer's apartment. Well, the place, you're saying the place is where they first accepted it, right? Right. Yeah, but suppose it's a large, there's several rooms in that unit, and they accept it in unit one, in room one, and they move to unit two, and there's the accident right in the unit, in the same unit. Owned by the same person, Your Honor? Yeah, I mean, they're moving it from one place to another within the unit. Why, your argument would be that they accepted an accident even within that unit would be covered. Are they, I apologize for my misunderstanding, are they moving the piece of furniture just from one part of the unit to another? One part of the unit to another part of the unit. Then it hasn't been accepted for movement onto a vehicle. So why is that? Why is that? It's been accepted. Eventually it's going to be moved onto a vehicle. Oh, is it eventually going to be moved onto a vehicle? Well, I think you have to look at- Isn't that what you're arguing? Oh, yes, yes, yes, yes, yes. I didn't understand your hypothetical. I will say that it is a harder question when you are within a unit owned by one person. Okay, well, let's make it a building. You're within the building, owned by, or partly owned by one person. Partly owned by one person, but one thing you have to look at is not just where, you know, where was this item, you know, at, at various points, but where would a reasonable person accept, or where would a reasonable person expect that an item would be accepted and taken away from them? They would expect that in their apartment, just like they would expect if somebody is delivering a couch, that the place of final delivery is not going to be the foyer. It's going to be the unit where they live. The sense that we're going through this, how could you say that it's not ambiguous, though? Well, the Third Circuit agreed with me. I think one thing that I found was really interesting was that none of the players involved in this case were able to locate a case, either in New York or in the Second Circuit, dealing with the place of acceptance within a large condominium building. But there is one in the Third Circuit applying New York law, and what they looked at is, you know, where, in this case, it was a matter of where did the, where was the place of final delivery? And they specifically rejected the argument that you reach the place of final delivery once you cross the threshold into the building, right? There's still more delivering to do. You still have to carry it up somewhere. And in that case, they found the place of final delivery is not the building. It's not the threshold. It's the unit where the customer lives within the condominium building. It's not just the unit, right? So when you, so the contract says after it's moved from the place where it is accepted for movement into or onto an auto, right? Correct. So if they're in the apartment and they pick up the sofa, they're going to carry it to the automobile. Correct. But, you know, before the district court, the district court asked you, well, isn't it just the spot in the apartment where they're picking up the sofa? And you said no. You said you could slice and dice it, that even if you moved it two inches, has it been accepted for movement? That doesn't seem like a reasonable interpretation of the language. So your position is not that if you move it within the unit, it's accepted. Somehow when you cross the threshold of the apartment, you've accepted it. But, like, if I take it from the bedroom, then walk through the living room and out of the threshold, what is the metaphysical significance of the threshold of the apartment? That means now I've accepted it, even though I took it from a room in the back of the apartment. Well, it still hasn't been removed from the customer's, you know, sole residence. You know, if I, you know, to be honest. But why does that matter? So the idea is the customer has a kind of dominion over his, like, living quarters, and therefore you haven't accepted it from the customer until you cross the threshold? Well, if you put it down, then you still haven't taken it from the customer, whereas if you take it out of the customer's unit, it's there in the middle of the building. Why is that? Because the customer could say, no, no, no, I changed my mind, you shouldn't take it? Presumably the customer could change their mind. I mean, I don't know the details of the contract, but at any point. And the customer could change his mind, even if you're out on the sidewalk, right? I don't understand why it would matter whether the customer could change his mind. It doesn't. I don't think it matters that the customer could change his mind. Okay, so what is the significance of the threshold of the apartment? The threshold of the apartment is that is the area where furnish air has come to take the couch away. It then continues, excuse me, continues to carry it through the building. There's no sense that it, you know, the couch belongs somewhere else within the building. It's not, you know, something that is resident in a communal area. If I take it from the bedroom into the living room, there's no sense that it belongs somewhere else within the unit. Like I haven't, if I'm a furnish air pickup person, I haven't come to redecorate the apartment. I'm going to take the sofa through the rest of the apartment down the stairs and out to the auto. So I guess my thought is I can understand why you might say it's unambiguous that it's the spot in the apartment where it's taken for movement. But as between the threshold of the apartment and the threshold of the building, I don't really understand how you could conclude it's one or the other unambiguously. I think the question of whether it's in the bedroom or in the living room or in another room of the apartment is somewhat beside the point because those aren't the facts we have here. The facts we are here is the couch was taken from the customer, which is furnish air's business. If I can draw the line at the threshold of the apartment and not the building itself, is it because the building is partly owned by somebody else? And should that matter? Or is it, I mean, the place where it's accepted, one can say, gosh, what address is that? And then they go and accept it at that address, irrespective of where within the unit it is. Well, if they go- In the apartment, in the building it is. If they go to 247th Street and just go to the front door, they're not there yet. They have to then go into the building and find the customer's unit and obtain the couch. But also- But then they can find it there, but it's still the place where it's accepted. The address, the place connoted by the address itself is the place where it's accepted. Well, but beyond that, I think if you are stating that the place of acceptance is somewhere so broad, what you're really doing is cutting off, loading and unloading under the Wagman decision, which the Court of Appeals in New York rendered in 1952. It's been the law in New York for over 70 years, and it's meant to cover not just the immediate lifting- Is that a statement in favor of Wagman or against Wagman? In favor of Wagman. Is it 52 years old or what? It's venerable. It's still in place. Venerable, okay. It's venerable. Nobody's overturned it. I have- In favor against Madison, it's venerable. I have the utmost respect for the 50s, Your Honor. But more to the point, the complete operations doctrine as outlined in Wagman is not cut off that way. It's meant to and explicitly does cover the complete commercial operation of pickup and delivery. Now that have cut it back and are looking more at how close it is to the vehicle and the use of the vehicle. Respectfully, there's no case where the appellate division has cut it back in this context. If you're thinking of the Elite Ambulette case, that's just entirely distinguishable. For one thing, that case had nothing to do with moving property. We don't know what the terms of the policy were, but under the traveler's policy, Elite Ambulette also would not have triggered the auto exclusion because there was no property being moved. But more to the point, in Elite Ambulette- It didn't turn on property. I kind of would think that an argument you could make about Elite Ambulette is Elite Ambulette says, well, the loading and unloading is about the use of the vehicle. And the accident in that case wasn't connected to the use of the vehicle. But the contract in this case defines use not just to include the utilization of the vehicle, but use includes not only operation, but also loading and unloading. And loading and unloading is the handling of property after it's moved from the place where it's intended for movement onto an auto. So the contract actually defines use to include something more than the actual utilization of the vehicle. Correct. So the district court is saying there's this requirement about a nexus to the vehicle, but that's only if all the language you had was use. And maybe if the ordinary meaning of use is connected to the vehicle, utilization of the vehicle, that would be one thing. But your contract actually defines it from movement from when it's first accepted until it's loaded on. Exactly. So if you had parked the vehicle really far away from the building, you might be outside the building with the couch, but you're going to walk a long distance to get to the vehicle. Yes. But even the other side, Furnish Air would agree that you are now in the process of loading because you've exited the building, right? But there might not be a nexus to the vehicle because you just tripped on the sidewalk. If you tripped on the sidewalk, there's arguably not a nexus to the vehicle because the instrumentality of the injury is not the process of loading and unloading. It's not the carrying. Right, so even a lead ambulant would tell us that if you get into an accident outside of the building, as long as it has no connection to the utilization of the vehicle, it wouldn't be part of loading, right? If the accident was not part of the, was not, I guess the instrumentality was not the actual process of the carrying to the vehicle. So, for example, in a lead ambulant, that works as well because at that point, even if you accept that the person was the thing that was being loaded onto the truck, that person had been left by the lead ambulant person who had been assisting them down the staircase. They had gone back upstairs. The patient was still sitting by himself on the landing in a temporary wheelchair. The wheelchair malfunctioned, and that's what caused his injury, not being carried or being otherwise assisted. Right, so the argument is that something about the vehicle has to be connected to the injury in order for it to be part of loading. Correct, but the thing that can be – But I guess just to clarify, does your contract require that? Because your contract doesn't say loading and unloading is only something connected to the utilization of the vehicle. It says loading and unloading is all handling of property from the time it's accepted into place for movement onto the vehicle, right? Correct. So was the district court wrong to say that there's a nexus to the vehicle requirement because he didn't take account of your particular contract? I don't think the district court was necessarily wrong given the way courts have interpreted Wagman, but I think what the district court got wrong, and you can see it in the cases the district court cited, are the district court looked at cases where an outside force came in and caused the accident. Somebody fell in a hole in the concrete after they got out of the truck. A horse jumped off of a ramp. A dog bit somebody. What's troubling me is the district court says the contract is ambiguous as between – in terms of the meaning of the word place. The place could be the apartment. The place could be the building, and so therefore we look outside the contract in order to resolve the ambiguity. But he never resolves the ambiguity, right? This principle about a nexus to the vehicle doesn't tell you whether the place is the apartment or it's the building, right? You could have a nexus to the vehicle within the building if there's an internal garage. You could have no nexus to the vehicle out on the sidewalk if you're far away from the vehicle and you just trip on the sidewalk, right? So isn't that wrong? I mean if the district court is purporting to resolve this ambiguity and doesn't give us an answer as to what the place means, then he's not allowed to look outside the contract. The whole reason he's authorized to look beyond the terms of the contract is because he's purportedly resolving this ambiguity about the meaning of the word place. Right. Well, I think a problem with – and this is one of the problems with what the district court did – is you can't import a proximity requirement into loading and unloading, right? It's focused on the process of taking the property from where you got it and putting it in the truck, transporting it, and bringing it back. Well, maybe you could import a proximity requirement if the contract, in fact, said loading and unloading is defined in relation to the proximity to the vehicle. But this contract doesn't import that, right? You can contract around almost anything. But what did the amulet seem like it did? Because the whole basis of it is about the tie to the word use, right? I mean we don't know what the contract in the lead amulet said. It doesn't – Well, I guess the logic of the lead amulet, that use necessarily means something connected to utilization of the vehicle, would not apply in a case like this one where use is defined not in relation to the utilization of the vehicle. It's defined as not only operation but loading and unloading, which is the whole process of handling property after it's accepted for movement, right? I would say to the extent that somebody tries to reduce the universe of that broad loading and unloading in the contract, I would say yes, that is at odds with the language of the contract. The argument has been made in this case that that has been curtailed by the case law. I don't think in this case that that's consistent with Wagman. It's certainly not consistent with the language of the contract. Right, well, I mean you say it's not consistent with this case but also not the language. Isn't the language of the contract more important? I mean we are purporting to interpret the contract. So even if some case law is interpreting other contracts, if your contract is specific on this point, that would trump, right? It would take it outside the universe of the case law. I guess I have this other question, which is the district court didn't apply the precept that says we construe insurance contracts against the insurer because he said the policy reason for that precept doesn't apply, that there's going to be some coverage either way. But isn't a precept about the meaning of the contract? Like why would it depend on whether there's another insurer available? I think it is dangerous, Your Honor, to start interpreting insurance contracts based on the other contracts that the insured may have with other insurers. I will say if there is ambiguity and it's construed against the insurer, that we then have two insurers on the hook because on the other side of traveler's auto exclusion is the mirror coverage of the auto policy. That's right. So if the district court thinks it's ambiguous in terms of the word place that it could either mean the apartment or the building and New York tells us to construe ambiguities against the insurer, wouldn't that mean that for travelers it's the building and for State Farm it's the apartment because you construe an ambiguity against the insurer? I think you do construe an ambiguity against an insurer. I don't believe there is an ambiguity here, but I agree with you. Your language is unambiguous, but if it is ambiguous, wouldn't that mean that Furniture would have coverage under both contracts? I think you're on to something, Your Honor, yes. I thought that the whole idea here and that the parties agreed below that these were mirror policies. There was no tailing between them and no overlap. Am I correct on that? I think that the parties agreed that at least the likelihood of there being coverage under one or I'm sorry, that there being coverage under both was extremely unlikely, right, because unless Well, it would have to be a legal construct. Yeah, correct. Looking at the language. Correct. Because one was before and the other was after acceptance. Right. These are clearly designed, and this is not unusual in general liability versus auto policies. Right. These policies were designed to cover two different things. And as in many insurance cases that we get, this is language that is replicated throughout the industry. Yes. As we've shown in that. Correct. Yeah, so the parties seem to have set as a goal not to have the contracts overlap, but if in fact they wrote an ambiguity into the contract, New York law tells us we construe the ambiguities against the insurer, right? So they might in fact overlap if in fact what ended up was an ambiguous boundary in terms of where one contract starts and the other ends. I think if you find that language ambiguous, that is probably where we end up. Okay. And then going back to the ambiguity, if the customer only rented a bedroom within the apartment, then would you say that the place where it's accepted for movement is the bedroom? Yes. So it is about the customer's dominion over the space? I believe so, yes, at least in part. So if I don't own the apartment at all, I'm the customer, but I say, oh, actually I brought the sofa to my friend's house, so I have no dominion over anything. But you go pick it up at my friend's house, is then the place, the very spot where it's located? I mean, I think at that point the friend's the custodian of the couch, at least temporarily. So you're saying that the place means something like where the custodian of the sofa has dominion? You know, if you're shuffling facts, yeah, I'm sorry. Is there a different rule if it's one private house where the building is owned by one person as opposed to a business establishment where there may be multiple owners? I could see there being a difference if you're going to somebody's house as opposed to a unit within an apartment building. Has it been picked up from that customer if you've picked it up in the kitchen but haven't taken it out the door yet? I could see how that could be read differently. And why does the boundaries of that space matter? Because we have to define what is the place where the item was accepted and taken for loading and unloading. I mean, we need to define place somehow. So if I own a big mansion, right, it's like a huge thing, and you take the couch from the top floor way back in the building and it has to travel very far to get outside my mansion, and there's an accident within the mansion, it still hasn't been accepted as your position for movement? I think that that is a valid argument. But is that your position? I mean, I don't really have a position on that because I'm not here on a mansion case, but I think that that is- Well, I guess, you know, but this is a normal thing we do when you give a position like you think in this case the place is the unit, the housing unit, the apartment. I'm asking if the housing unit was much bigger and there was actually a lot of traveling, a lot of movement toward the auto that took place within the unit, would that make a difference? I mean, that could potentially fall into, and this is a concept that came up in the briefing conduct preparatory to loading. Before it leaves the place where it's accepted, but you're getting ready to take it, it might fall under that category. Okay. I don't think the language is helpful in terms of resolving what I see as an ambiguity on place. Because where it's accepted for movement onto an auto, that where could modify a place of indeterminate dimensions. It could be a room, it could be an apartment, it could be the whole building. Place is place. You know, it doesn't help on that score. So, I don't see any resolution to the ambiguity here. But don't you have to look at it the way a reasonable person would expect that term to be used? And where would a reasonable person expect a couch to be picked up from if they're living in an apartment?  Why would they – so I would just say – so I was suggesting earlier that the place, if it means something unambiguous, might just mean the spot where you pick up the couch. Because that is where you take it, and you're now going to engage in a movement onto the auto. I'm going to pick it up from this spot, and the next thing I'm going to do is put it down in the auto. But you've already – you conceded already that all of the movement I conduct within the housing unit is not loading. And somehow when I carry it over the threshold, I've now started engaging in the process of loading. And I kind of don't – I kind of don't see why a reasonable person would reach that conclusion. I mean I think if it's the court's view that a reasonable person would expect loading is taking place starting within the apartment, I'm not going to argue with that. Well, I mean you did argue with that when the district court suggested it. You said that that's not a reasonable interpretation of the contract. So why isn't it? Why didn't you make that concession? Well, I don't think moving an item over a couple of feet in one room is beginning the process of loading it onto a vehicle. You've just – you've moved it a couple of feet. And in that case, maybe it's conduct perfectly unloaded. Why haven't you moved it? A couple of feet into the apartment, like right at the front door. So actually they exit the apartment, but they've only moved it a couple of feet. You wouldn't have started the process of loading yet until you move 10 feet or some kind of minimum. Can you repeat the question? I missed the beginning. If the couch was located right inside the front door of the apartment so that you haven't even moved it a couple of feet when you cross the threshold out of the apartment, would that mean that you haven't started the loading process yet? No, because you've removed it from the customer's apartment. Okay, but you just said a moment ago that when you move it a couple of feet, it doesn't make sense to say that loading has begun. Well, if you – if it's within one room. Do you think the threshold in the apartment has some kind of magical property that once you cross it, loading has begun? Sure, because it's the place where it's accepted. I'm just trying to figure out why that would be. Because it's the place where furnish air is going to obtain the couch. Okay. I think we have that argument. You've reserved time for rebuttal, so we'll hear from you again. But let's turn to the first appellee, Mr. Burke. Good morning. Thank you, Your Honor, and may it please the court. We've been talking a lot this morning about what is the definition of the place within the contract. And we think that Judge Engelmeyer was right about how he interpreted the place consistent with our viewpoint. But I think that what the conversation today deeply underscores is that at minimum it's ambiguous. So just to take a step back, when you're asking someone what is – if someone were to ask me what is the place that I'm at, right, I could say New York City. I could say right at this lectern. I could say at the Thurgood Marshall Courthouse. And all of those things would be linguistically correct. And then the question would be – The contract doesn't mean anything that's linguistically correct. Like, furnish air was not picking up the couch in New York City. I completely agree with you, Your Honor, and that's where I was going to get next. And I think the question then becomes, based on the language of the contract and based on New York precedent, what is the right lens that we want to think about in terms of how – Before I get into New York precedent, just in terms of regular language, if I say – if I'm an apartment dweller and I say come over to my place or come pick it up from my place or come visit my place, I'm talking about my apartment, right? Well, I think that – It's kind of ludicrous if I invite somebody over and they're, like, in the lobby or the stairwell. They say, hey, I'm at your place. That would be a weird thing for them to say, wouldn't it? Well, no, but I think what the contract here says is it's the place where it's accepted for movement into or onto an automobile. And I don't think that a natural person – or a person would naturally say that on a – that, you know, when you're at the threshold to a 6-4 apartment, that something magical happens there that you've now accepted it, you know, for movement into or onto an automobile. I think if we're thinking about what does the contract language tell us that the place is referring to, this is ultimately an exclusion that's answering the question of what is the meaning of the use of the automobile, right? And use is defined to include loading or unloading. I guess that's the question I had asked Ms. Gross. So Judge Engelmeyer relies on these cases that are about – there needs to be a connection to the utilization of the vehicle in order for it to be part of the process of loading. But the contract here, the exclusion here, defines use to include not just the utilization of the vehicle but the entire process of handling the property from the time it's accepted for movement until it's put onto the auto, right? So doesn't the contract here tell us that actually utilization of the vehicle is not part of use? No. I think in all of these cases, use is always defined to include loading or unloading, and then the question becomes – Unloading is defined not to necessarily have an access to the vehicle. It's the whole process of handling the property from the time it's accepted for movement until it's loaded onto the vehicle. So even under your view, if the truck were very far away from the building, if I carry the sofa out of the building and I still have to go like 20 blocks to bring it down to the truck and I just trip on the sidewalk and drop it and there's property damage, you would say that that's part of loading because I've taken it from the place, but there would be no connection to the vehicle, right? I think still the accident would have to arise from the loading or unloading. And so I think the argument would be in that circumstance that the accident is not coming from the handling of the property. It's coming from something else. And certainly in your cases have repeatedly said that when there's not a nexus to the vehicle, when there's not a use of the vehicle, that's involved in the accident. Yeah, but the contract defines – it says bodily injury or property damage arising out of use. Use includes loading or unloading. Loading or unloading means the handling of property after it's moved from the place where it's accepted for movement onto an auto. So what that means is the property damage has to arise out of the handling of the property after it's moved from the place where it's accepted for movement. So if I drop it on the sidewalk when I'm far away from the truck, certainly that damage arises out of the handling of property after it's accepted for movement because I'm handling the property on the sidewalk, but there's no connection to the vehicle. So the contract doesn't say there needs to be a connection to the vehicle. Well, first of all, I guess two points with respect to that. First of all, that wouldn't answer the question of how's loading or unloading begun because that turns on the meaning of the place, right? But let's assume – Outside the building, so everybody agrees at that point loading has started, but there's no connection. I understand Your Honor's – I do understand Your Honor's question. I think the way that your cases have looked at this is they have imposed this nexus requirement in all sorts of circumstances. But the contract is paramount, right? So I read elite amulet. It doesn't say that we have a provision that use was defined to include the handling of property. And so I don't know. It seems like that might be a natural way to read a contract that says loading is anything arising out of the use of the vehicle, and then the elite amulet argument would make total sense. But if I have a contract that defines use to include not just operation or utilization of the vehicle, but also the handling of the property during the whole process before it's put on the auto, I'd reach a different conclusion. So I think this is important. So in elite amulet, first of all, the court did find it wasn't just use and operation. They understood that use and operation included loading and unloading. So that was in the opinion, and that was part of the court's holding.  And I said, look, there's different nuances in the contractual language from one case to the other. You know, how do I think about that? Are there meaningful differences, or can I treat them as substantively the same? So this is that appendix 1023. And counsel said, no, for purposes of this case, you can treat them all the same. And I haven't heard, either in the briefs or really here at argument, I haven't heard counsel say there's some sort of difference in the contractual language here. All right, so you're saying that Traveler has conceded that actually the contract isn't meaningfully different than the one in elite amulet. Even though she just told us that we don't know what the contract said in elite amulet, and that's a problem. She did say that she doesn't know what the contract is in elite amulet, but below, you know, she did take the position that, you know, the contractual language is different. Okay, so I get your argument that maybe they made a concession. Yeah. Assuming they hadn't made the concession, doesn't this contract define use to go beyond utilization of vehicle? We agree that it talks about the loading or unloading from the place at which it is accepted for movement into or onto a vehicle. But we continue to think that the right way to understand the place is looking to two things. One, looking to the overall contractual language and the fact that really what this contract is about is it's about creating an exclusion for the use of an automobile. And, you know, I think Your Honor kind of mentioned this before. If you were to take seriously the other side's argument, if our customer's couch was going to be shipped or sent by plane to Great Britain, right, you know, their argument presumably would still be the same, that this accident took place during the loading of the airplane because it's left the apartment and it's on the way to the airplane. I just don't think that that's a natural reading of the contract. And again, here. Why not? Why is it not? So if I take it out of the apartment and I'm going to go put it on an airplane, isn't that the handling of property from the time it's accepted for movement onto an airplane? Yeah, I just don't think that that – I don't think that in thinking about the place where it is accepted for movement into or onto an airplane, I don't think that somebody would think of that as a six-floor apartment. I think Judge Bernaschi's point is that you have to look at the terms of the contract itself. The contract doesn't limit it to – it's a broad term in terms of acceptance. Acceptance after the – it's after the acceptance for movement. Right, but I guess the question comes back to where is the place where it's accepted for movement into or onto an auto. And I think when you naturally think about where is the place where something is – where an item is being accepted for being loaded onto a vehicle, I think most people would think that that's at the structure itself. When you leave the – so there's two steps. Why would people think that? But I just don't get – I mean I was suggesting with Ms. Gross that it might be the spot where you take it because that's where you pick it up and move it. I mean do you agree that that's a natural understanding of the place where you accepted it and then you're going to move it onto the auto? I think that you could plausibly – again, this is kind of where I started out. I think you could plausibly make a lot of linguistic arguments for where is the place of acceptance. Obviously, as you pointed out – Logistic, I think literally it could be at different points that you actually pick up and move it for loading. I think first of all we think there's a definitive answer because of the fact that Travelers conceded that that's not a reasonable interpretation of the contract. And I think what that underscores is that, again, when we're talking about acceptance, we're not just talking about acceptance in terms of like accepted, you know, the ability to handle the item. It's about acceptance for movement into or onto an auto. And I think the right way to think about what happened here – and frankly this is at page five of their brief and the way that they describe our business, right? We remove items from our customers' premises and then we transport them elsewhere, right? And I think that that first step of removing them from the premises, that's a step that's preparatory to loading. And I think we talked a little bit about that. So I asked opposing counsel what's magical about the threshold of the apartment. But what's magical about the threshold of the building? It's not – If I've taken the sofa and I'm traveling out of the building in one continuous movement onto the auto, what does it matter whether I'm right inside or right outside the building? It's not that there's something magical about the threshold of the building. It's the question of what's the right level of generality in terms of when you define the place. And it makes sense to define the place at the level of a structure, both because you do have to remove an item from a structure before it's loaded onto or into – Well, you remove it from the unit, right, that has a unit. Yes, but you certainly – but once you've removed it from the unit, you can't load it into or onto the vehicle until you've also removed it from the structure. And then I think – If I'm going to enter or exit as the auto, that means that it's when I exit the structure? Well, I think it makes sense to think of loading – again, into or onto, you know, does kind of, I think, point towards at least some level of nexus between, you know, the loading step and the vehicle. And I also would say that, you know, New York precedent – you know, we sort of put that to one side. But I think New York precedent is really instructive here, right? And ultimately what this court is trying to do is to understand what would, you know, what would New York's court say about this? That's my question. So the question – so it is true that the district court says it's ambiguous as between the housing unit and the building. And so to resolve that ambiguity, I'm going to look to New York case law. But does it ever answer the question? I mean, this idea about nexus to the vehicle doesn't tell me whether the place is the apartment or the building. I mean, what is – I think it does – What is Judge Engelmeyer's conclusion on that? No, I think it – Does the place mean the apartment or does it mean the building? I think he is saying that it means the building. And I think the reason he's getting to that conclusion is the elite amulet case. And just – You have to say that that's implied in his opinion. I'm sorry. He doesn't express it. He doesn't express it at all. You're just sort of saying, well, because of the way he – because of the outcome, he had to have said it. Well, I think as a practical matter, what he says is that the most factually apposite case is the elite amulet case. And in that case, ultimately, what the New York appellate division is saying is it's not making – its decision is quite clear. It's saying that because the accident happened away from an incidental to the vehicle, it doesn't count as loading or use of the vehicle. Right, because elite amulet turns on the meaning of the word use. And there has to be a connection to use of the vehicle. It doesn't tell us anything about what place means. You can have a connection to the vehicle within the building if there's an internal garage or loading area or something, and you can have no connection to the vehicle when you're outside the building if the vehicle is far away. Well, I think that elite amulet is talking about the – I mean, the opinion specifically understands that use does encompass loading or unloading. And they're saying this is just too attenuated to count as the loading or unloading. Right, but they're understanding loading in terms of use, not in terms of the place. I don't mention the place in elite amulet, right? Well, I think that, you know, again, this is where we come back to the fact that, you know, the argument was below was decided on the idea that all of these cases are really pointing towards the idea of a similar language that isn't supposed to be substantively different. And so I think we come back to that. I did just want to – Can I ask the other question that I had asked Ms. Gross? Sure. So Judge Engelmeyer says that he's not going to apply the New York precept that you construe the contract against the insurer because in this case there's going to be insurance anyway, and so the policy basis for having that rule doesn't apply. But isn't the precept just a way of understanding the meaning of the contract? So then why wouldn't we apply it? No, I agree with that, Your Honor. I think that would be the appropriate way to apply it. And New York cases say the same. Okay, so then if we do that, so if we say that it's ambiguous and we apply the precept, it would mean that furniture has coverage under both contracts, right? I think that might well be the implication. Again, I think for our purposes we do think that the best meaning of the – But you think it's unambiguous that it's the structure. But if it's ambiguous, then you apply the precept to both, right? Yes, and the American Transit case that we've cited in our brief is actually right on point with that. So that was a case in which you had two policies that were supposed to basically – one was supposed to end on midnight February 28, 1998 or something like that, and the next one was supposed to start midnight February 28, 1998. And the two insurance companies took different positions of, okay, is it midnight, like at the start of the 28th or midnight at the end? And the court said, you know, no, it's ambiguous, and as a result we're going to view the coverage as overlapping. And so that does happen in some cases. You know, we don't object to that, but we also do think that at minimum the fact that you have New York cases – and it's not just the Elite Ambulight case. It's also the Court of Appeals case in the Mueller case, which was a unanimous decision. Also, Justice Venerable decided right at the same time as – But wait a second. So the reason the district court got to Elite Ambulight is because of the initial conclusion that the precept should now be applied. But you're saying it should have been applied. It should have. So we should have stopped the analysis one step earlier, applied the precept, and that leads to the conclusion that it's both contracts, right? I think that you're certainly going to look to New York law in terms of deciding whether there is any ambiguity, but if you find that there's an ambiguity, then we agree that at that point you should interpret the contracts as you've described and we would get a rolling coverage. Thank you. Okay. Thank you very much, Mr. Byrne. We'll turn to the next appellee, Mr. Scahill. Good morning, Your Honor.  May it please the Court. Your Honor, I think we've been debating this morning a concept that does not need to be reached by the Court in terms of the definition of loading and unloading. Your Honor brought up a hypothetical in terms of what if the vehicle was a few blocks away. Now, you could use the same hypothetical and ask what if the vehicle was in New Jersey or what if the vehicle was never there. Is the actions that were being accomplished at the time of this incident occurring, by the way it occurred in the sixth floor stairwell of the building, would that constitute loading and unloading under the State Farm policy? And from the position of the appellee, State Farm in this case, it does not constitute loading and unloading because of the various precedents that have been set forth by New York State law interpreting the issue of loading and unloading. And this was a New Jersey policy. The Court did a conflict of laws analysis, a choice of law analysis, and concluded that the same result would occur under either New Jersey law or under New York State law. The policy- In terms of those contracts, though, and the extent to which they use the same definition of place, and the implications of place, excepting for moving onto from a place. Were those in those contracts? That was in the traveler's policy. The State Farm policy covered- I understand that in this case, but what I'm trying to understand is whether the precedents are really applicable if the language in their contracts and those precedents was different. Well, the Court went through an analysis of the New Jersey case law on that issue and concluded that that was substantially the same as New York law. Yeah, I understand that part of it. But what I don't understand is its relationship to the contract itself. And you see, you have precedent. You could have a common law, right? You could have a common law, judge-made common law rule that would cover this kind of thing. But the parties have a contract. And the terms of the contract is the language in this exclusion that we're talking about, traveler's exclusion. And so why isn't- how relevant are these precedents under those circumstances? How do they come into play? Well, the lower court- So this case is too tough to decide without it? I wouldn't think so, judge. The lower court looked at cases with similar fact patterns. In both New York and New Jersey- I'm looking at the similarity not of the fact patterns of where the accident occurred or whether the guy was bumped into somebody on the street or a wheelchair was released, but the actual contract, because this is a contract case. It's interpreting contracts. Understood, Your Honor. And Judge Engelmeyer did, in fact, note that the language in the policies was substantially identical, according to him and his analysis of the New Jersey and New York law under those circumstances. Yeah. But- I didn't see the analysis of the kind that we're looking at in terms of the acceptance of the- He did not quote the language, but he did- Correct, Your Honor. But I think the gravamen of the entire argument is to what extent will this court extend the doctrine of loading and unloading against the precedents that have been set forth in New York and New Jersey on the same issue? And really in terms of the- You don't disagree with the general principle that we are applying the contract, right? Correct, Your Honor. The Travelers talks about the place where it's accepted, and also the State Farm policy has an exclusion for damage built in from the handling of property before it's moved from the place where it's accepted by the insured firm movement into or onto. Right, and Judge Engelmeyer- So the place, right, is decisive in both contracts. Well, Judge Engelmeyer made the distinction that this was preloading when they were moving- I know he said that, but that's the question. Right, he said that this was preloading when they were moving the couch- Under the logic of Judge Engelmeyer's opinion, if, in fact, the hypothetical you mentioned, that the vehicle is very far away, so I take it out of the structure, and I'm going to walk 10 blocks to drop it off at the vehicle. If I just trip on the sidewalk and drop the couch, and so there's property damage, I have accepted it for movement under your theory because I've exited the building. But there's no connection to the vehicle, right? Correct, and that's the distinction- So then you're saying that that still wouldn't be loading because there's no connection to the vehicle. Correct, and that's what all- But isn't your position that it's accepted for movement to the vehicle after you exit the building? No, Judge Engelmeyer made the distinction that it's- Whether it's the building or the apartment doesn't matter in terms of what- Okay, so that's interesting, right? So Judge Engelmeyer says the ambiguity is between whether the place means the apartment or the building, and you're now saying it doesn't matter whether it's the apartment or the building because there's this whole other principle about the connection to the vehicle that should define loading or unloading. Correct. So where does the district court, you know, if you say the reason we can look beyond the contract is because there's an ambiguity of this term, so I'm going to resolve the ambiguity, and then he never resolves the ambiguity. He just invokes some other theory. No, I understand. Is that a problem? Why does he get to look beyond the contract then? No, I understand. He makes an analysis. Yes, no, I understand your honest point, but I believe the lower court determined that the contract terms to be construed strictly against travelers and that there's no coverage under the state farm policy because you do not have that nexus of- But he doesn't construe it against travelers, right? He says I'm not going to apply that precept because of policy reasons, and so I'm just going to rely on this principle that there needs to be a nexus to the vehicle, and so he just says this is just not loading under that definition. Right. Well, that's a factual determination. I guess I have this question. Since both other counsel agree to this, so if in fact the language is ambiguous as between the apartment and the building, doesn't that mean we should apply the precept to both contracts and there's coverage under both? Well, I wouldn't agree that there'd be coverage under both, Your Honor. I know you wouldn't want to, but why wouldn't there be? The reason being because the definition of loading and unloading and the interpretation of loading and unloading under New York law requires that nexus to the vehicle. Even if that's not in the contract? So let's say a contract said we define loading and unloading not to impose any requirement of a nexus to the vehicle. They wrote that into the contract. Would New York law still modify the contract to require a nexus? Well, under your hypothetical, no, but- Okay, so the language of the contract controls, even over whatever the background principles of New York law are, right? You still have to use the plain meaning of what's loading and unloading. Is the plain meaning of what's loading and unloading taking a couch in a six-story stairwell and striking a sprinklehead and flooding out the building? Is that loading onto a truck? You know, from a state policy perspective- Well, I mean, if the contract defines loading and unloading as the handling of property after it's accepted for movement- Right, that's the traveler's policy. Okay, well, so your policy says damage is resulting from the handling of property before it's moved from the place where it's accepted by the insured for movement. So if it's after it's accepted by the insured for movement and you're handling the property- You still need a nexus to the truck. Why? Where's that language in the contract? Does the contract say you need a nexus to the vehicle? Well, that's the plain meaning of loading and unloading. Well, if loading and unloading is defined as the handling of property after a certain point, then the question is not whether it's the ordinary meaning of loading and unloading. It's the question of whether it meets the definition of a contract, which says the handling of property after a certain point. So when the movers were carrying the sofa down the stairs, were they handling property? Of course. Okay, so if, in fact, loading is defined not as a connection to the vehicle, but as the handling of the property after a certain point, then it would be that that would be covered, right? Well, that would be against- Would your position be different if there was damage to the building that was caused just as they were going out the door? Downstairs? It would still need a nexus to the vehicle. And there was damage to the building. Yes. It would still need a nexus to the vehicle. You have a better argument, I think, and that is that the actual language within both the travelers' policies, that is the primary and the other one, is that it's the handling of property after it has moved from the place- Correct. So that language is in the contract. What you make of it is another question. Is it just accepted for movement some day, somewhere in Monterrado? Or is it more, is there some sort of a nexus? And that you could have an interpretation based on the contract about a nexus. Understood, Your Honor. And I would still make the argument that, you know, what if this was several steps in the movement of this particular couch, what they were doing? So instead of taking it to the truck, they were taking it to a storage room within the building. And then later, they would move it out to the truck. Is that loading onto the vehicle that would be covered? Well, so in that hypothetical, the question is they're moving it not onto the vehicle. They haven't accepted it for movement onto the vehicle. Maybe they've accepted it for movement into a storage room. I don't know. But isn't that different in this case? After they take the sofa from the apartment here, the next step was putting it onto the vehicle, was it not? From all accounts, there was no. No, that's right. But from all accounts, that's true. But what if there was a staging area where they would bring everything down to one area and then- You could argue that it's accepted for eventual movement onto a car. In the meantime, it's going to go to a staging area. I mean, all of these are possibilities, it seems to me. Understood. Thank you, Your Honor. Ultimately, we have to look at- maybe have to use some common sense. God forbid. Okay. Thank you, Your Honor. Thank you. We'll turn back to Ms. Gross on rebuttal. Thank you. Before we get into the details, I just wanted to correct one item for the record. Counsel for Furnish Air indicated that I conceded at the argument below that the contractual language in elite amulet isn't meaningfully different from the traveler's policy. I did no such thing. In fact, I addressed this in footnote 5 in my reply brief. I'm sure it was an intentional mistake. But the question was about whether the cases involved substantially identical or functionally identical policy language. It was in exchange specifically about the striker sheet metal case. And I, in that case, said, you know, in that case, striker sheet metal, I agree it's functionally the same. I made no such representation about any case, particularly elite amulet. I mean, one of the things I argued and one of the things I continue to argue is the language just isn't the same. So I wanted to clear that up. Just going back to something that Counsel for Furnish Air was discussing, we've had a lot of discussion about what is the place of acceptance. And he made a very good point. One of the things we have to look at is what is the correct magnitude when we're defining the place. And I think what you have to look at is where would be the place where you have location information specific enough that allows Furnish Air to go there to get the couch. And again, if you tell Furnish Air go to the textile building, that's not enough information. If you tell Furnish Air go to apartment 7 in the textile building, that is enough information. That's the place that they have to go to to obtain the couch. That's the place where they accept it. And as State Farms Council has said, there's no dispute that once it was taken out of that apartment, the intention, had there not been an accident, was to move it directly on the truck. So if the customer put the couch in the lobby for you to pick up, then it would be enough information to say go to the textile building, right? I suppose it would be. So would that change the meaning of the place if the customer did that? Well, I think if the customer did that, we wouldn't have to distinguish between the customer's apartment in the building because the only place Furnish Air would have gone is into the building. They wouldn't have gone to the apartment. Right. But in that case, the place would be the building. I mean, it would have to be owing to the reality of where the couch was. Yes. OK. All right. All right. Thank you very much. Ms. Gross, the case is submitted.